SO ORDERED: September 17, 2008.

_____
**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| Scott P. Hedge and ) | Case No. 07-92511-BHL-13 |
| Michelle K. Hedge, ) | |
| ) | |
| Debtors. ) | |

### ORDER

This matter comes before the Court on the **Objection to Confirmation of Chapter 13 Plan** filed on January 18, 2008, by FIA Card Services a/k/a Bank of America by eCAST Settlement Corporation, as its agent and eCAST Settlement Corporation, assignee of GE Money Bank Gap (collectively hereinafter "eCAST"). Scott and Michelle Hedge (hereinafter "Hedges") filed their **Reply to Objection of eCAST Settlement Corporation** on March 21, 2008. A hearing was held on April 8, 2008 at which time the parties were given thirty days to submit memoranda. After numerous reply and response briefs, the Court took the matter under advisement.

## FACTS

The Hedges filed their petition for chapter 13 bankruptcy relief on November 14, 2007. They reported a monthly net income of $6,528.64 on Schedule I, and monthly expenses totaling $5,143.40 on Schedule J, leaving a monthly excess of $1,385.24. Included in their net income on Schedule I was $528.00, representing a monthly VA Disability payment made to Scott Hedge. The Hedges' monthly income places them above the applicable median income for a family of five in Indiana.

According to their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (hereinafter "Form B22C"), the Hedges have a monthly disposable income of $636.68. This income figure does not include Scott's monthly VA Disability payment and includes an expense of $332.00 which represents the transportation ownership/lease expense for the Hedges' second automobile. They own this automobile free and clear of liens. The Hedges have filed a sixty-month chapter 13 plan which proposes to pay $1,386.00 per month for the first 54 months and increases to $1,586.00 for the final 6 months. The plan will not fully pay the claims of unsecured creditors.

One of the Hedges' unsecured creditors, eCast has filed an objection to the Hedges' plan. ECast's objection raises three issues. First, should VA Disability payments be included in the Form B22C calculation of disposable income? Second, may an above-median chapter 13 debtor take the transportation/ownership expense deduction for a second vehicle which is owned free and clear of liens? Finally, how is a debtor's "projected disposable income" determined for purposes of 11 U.S.C. §1325(b)(1)(B)?

**DISCUSSION**

I.      **Should VA Disability Payments be Included in the Calculation of "Disposable Income" of 11 U.S.C. §1325(b)(2)?**

Prior to the adoption of BAPCPA in 2005, "disposable income" was defined in 11 U.S.C. §1325(b)(2) as:

> [I]ncome which is received by the debtor and which is not reasonably necessary to be expended –
> (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions ...
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

That definition gave bankruptcy judges a great deal of discretion when determining what was, and was not, "disposable income" to a debtor. After BAPCPA was adopted, it was clear that it was Congress' intent to limit this discretion by more narrowly defining what was not "disposable income" to a debtor. "Disposable income" is now defined in 11 U.S.C. §1325(b)(2) as:

> [C]urrent monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependant child...) less amounts reasonably necessary to be expended –
> (A)(i) for the maintenance or support of the debtor or a dependent, or for a domestic support obligation, that first became payable after the date the petition is filed; and
> (ii) for charitable contributions ... and;
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The term "current monthly income," as used to define "disposable income," was new to the code and thus defined in 11 U.S.C. §101(10A) as:

> (10A) The term "current monthly income" –
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income ...; and
> (B) includes any amount paid by an entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses

3

>of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependant), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on the account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

Prior to the passage of BAPCPA, there were no listed exclusions from "disposable income" other than those which bankruptcy judges deemed reasonably necessary for the maintenance of the debtor and his dependents and business operations. Now with "disposable income" defined in relation to "current monthly income", exceptions to disposable income are specifically set out in section 101(10A). As the Bankruptcy Court in the Northern District of West Virginia points out, there are now only seven exceptions to disposable income: assets that are (1) not "income" to the debtor; (2) not paid by a defined "entity"; (3) not received on a regular basis; (4) not received for the household expenses of the debtor or the debtor's dependents; (5) Social Security Act payments; (6) payments to victims of war crimes or crimes against humanity, and (7) payments to victims of terrorism. *In re Waters*, 384 B.R. 432, 437 (Bkrtcy.N.D.W.Va. 2008).

In the present matter, the VA disability payments qualify as "current monthly income" to the Hedges. The payments, made by the United States government, are paid by an entity as that term is defined in §101(15). The payments are received on a regular basis and are presumed to be used for the purpose of helping with the Hedges' household expenses. Finally, these payments are not specifically excluded from disposable income are defined by statute. Accordingly, the VA disability payments should have been included in the calculation of the Hedges' current monthly income and therefore included in the calculation of "disposable income" in §1325(b)(2) and on Form B22C.

**II.     May an above-median chapter 13 debtor take the transportation/ownership expense deduction for a second vehicle which is owned free and clear of liens?**

11 U.S.C. §1325(b)(3) provides that reasonably necessary expenditures may be excluded from "disposable income" in accordance with 707(b)(2)(A) and (B) inasmuch as the Hedges are "above median" debtors. The question is whether a debtor, for purposes of §707(b)(2)(A)(ii)(I), may take the transportation ownership expense deduction specified under the Internal Revenue Service Local Standards for a vehicle which is owned free and clear of liens. The Court has previously answered that question in the affirmative in the case of *In re Daniels*, 06-91205-BHL-7 (Feb. 2, 2007).

In *Daniels,* noting the divergent caselaw on the subject, the Court began its analysis with principles of statutory construction, and ultimately aligned itself with those courts that have held that the transportation ownership expense is available to all debtor-owners even when the vehicle is owned free and clear. That is because the statute clearly draws a distinction, in the precise language used by Congress in establishing the means test formula, between "applicable" expenses on the one hand and "actual" expenses on the other. Reading the statute in its entirety, this Court concludes that expenses under the Local Standards, including the transportation ownership expense, are those applicable to the debtor based upon matters particular to that debtor, e.g. number of cars, size of household, where he lives. The issue in the present matter is the same issue that was previously adjudicated in *Daniels*. As the Court has been presented no new and compelling reason to rule otherwise, the decision in *Daniels* is confirmed, and the Hedges may take the transportation ownership expense deduction for a vehicle owned free and clear of liens on Form B22C.

5

**III.    How is a debtor's "projected disposable income determined for purposes of 11 U.S.C. §1325(b)(1)(B)?**

When a statute's language is plain, the sole function of the court is to enforce the statute according to its terms, so long as the disposition required by the statute's text does not produce an absurd result. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). 11 U.S.C. §1325(b)(1)(B) provides that if the trustee or an allowed unsecured creditor object to confirmation of a plan, the court may not approve the plan unless all of the debtor's "projected disposable income" is applied to make payments to unsecured creditors under the plan. Because it is not specifically defined anywhere in the bankruptcy code, courts have grappled with the proper method of calculating "projected disposable income", and three different views have emerged.

One approach, as discussed in *In re Hardacre* and it progeny, concludes that "'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." 338 B.R. 718, 722 (Bkrtcy.N.D.Tex. 2006). See also *In re Dew*, 344 B.R. 655 (Bkrtcy.N.D.Ala. 2006); *In re Grady*, 343 B.R. 747 (Bkrtcy.N.D.Ga. 2006). This approach continues the pre-BAPCPA method of using Schedules I and J to determine "projected disposable income."

Other courts use the debtor's "disposable income," as the starting point in determining "projected disposable income," but allow for an adjustment based on evidence of the debtor's future budget. See *In re Pak*, 378 B.R. 257 (B.A.P. 9th Cir. 2007); *In re Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2007). Pursuant to this approach, "a court will presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *In re Jass*, 340 B.R. 411,

418 (Bkrtcy.D.Utah 2006).

The remainder of the courts utilize a "plain meaning" interpretation. These courts begin with the code's definition of "disposable income" as a debtor's current monthly income less the standard deductions in §707(b)(2)(A). "Projected disposable income" then, is simply calculated taking the debtor's "disposable income" as determined on Form B22C and projecting it out over the length of the plan. See *In re Alexander*, 344 B.R. 742 (Bkrtcy.E.D.N.C. 2006); *In re Frederickson*, 375 B.R. 829 (B.A.P. 8th Cir. 2007); *In re Barr*, 341 B.R. 181 (Bkrtcy.M.D.N.C. 2006).

As of the date of this order, the Ninth Circuit Court of Appeals is the only circuit court to weigh in on the interpretation of §1325(b)(2)'s "projected disposable income." In *In re Kagenveama*, the court considered the bulk of the caselaw and concluded that projected disposable income must be determined based upon the plain text of the statute. 2008 WL 2485570 (9th Cir. 2008). The court stated that "the plain language of § 1325(b) links 'disposable income' to 'projected disposable income,' and we are bound by the definition of 'disposable income' provided in § 1325(b)(2)(B)." *Id.* The court went on to hold that it could "not de-couple 'disposable income' from the 'projected disposable income' calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate the linkage of the two terms." *Id.*

This Court is compelled to conclude that "projected disposable income" is the disposable income, defined in 1325(b)(2), "projected" over the life of the plan, for reasons so well stated by Judge Rich Leonard:

> . . . Both "projected disposable income" and "disposable income" fall under subsection (b) of § 1325. First, (b)(1) states that projected disposable income is to be applied toward unsecured creditors under the plan. Then, (b)(2) states "For purposes of this subsection, the term 'disposable income' means. . . ." 11 U.S.C. § 1325(b)(2). If "disposable income" is

7

not linked to "projected disposable income" then it is just a floating definition with no apparent purpose."

*In re Alexander*, 344 B.R. 742, 749 (Bankr.E.D.N.C. 2006). In *Alexander*, the court observed that the various lines of cases had emerged in an effort to address perceived disparities in the effect of the new law, particularly in relation to the newly defined "disposable income" figure generated via BAPCPA's Form B22C. Nevertheless, those arguments addressing perceived disparities were levied at the Congressional level and were resolved for good or for ill. Prior to the passage of BAPCPA, the court had discretion in calculating disposable income, now there is a precise calculation which serves to strip that discretion away from the court. That was an articulated purpose behind the reform, as noted by the Court in *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr.N.D.Ill. 2006) stating that "eliminating flexibility was the point: the obligations of chapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding".

To hold that projected disposable income is intrinsically linked to disposable income is not a new concept. "Projected disposable income" is a term which predates BAPCPA. It was historically calculated by taking "disposable income" under 1325(b)(2)(A) & (B), and projecting that amount over the "applicable commitment period." *In re Anderson,* 21 F.3d 355, 357 (9th Cir. 1994); *In re Solomon,* 67 F.3d 1128, 1132 (4th Cir. 1995); *Commercial Credit Corp. v. Killough*, 900 F.2d 61, 64 (5th Cir. 1990). As noted in *Kagenveama*, "[a]ny change in how 'projected disposable income' is calculated only reflects changes dictated by the new 'disposable income' calculation; it does not change the relationship of 'projected disposable income' to 'disposable income.'" 2008 WL 2485570, *3.

Based upon the foregoing, this Court adopts the plain meaning approach to determining a

8

debtor's "projected disposable income." Therefore, a debtor's "projected disposable income" should be calculated using his "disposable income," as defined in §1325(b)(2) and subtracting the standard expenses of § 707(b)(2)(A) and (B), projected over the applicable commitment period.

<u>Conclusion</u>

In the present matter, the Hedges failed to include Scott's VA Disability income in their calculation of their "disposable income." Therefore, eCast's **Objection to Confirmation of Chapter 13 Plan** should be, and hereby is, **SUSTAINED**. The Hedges are hereby ordered to file an amended Form B22C and an amended plan, in accordance with the findings above, within 30 days of the entry of this order.

**SO ORDERED.**

# # #

Distribution to all counsel of record.